**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| LIRIDONA GASHI,<br>Vezir Jashari 120<br>Ferizaj, 70000<br>Kosovo<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>WILLIAM PALMER,<br>22288 Highway 17<br>Lexington, MS 39095<br><br>SERVE:<br>William Palmer<br>22288 Highway 17<br>Lexington, MS 39095<br><br>　　　Defendant. | Civil Case No. 1:26-cv-1979<br><br>**Jury Trial Demanded** |

**COMPLAINT**

COMES now Plaintiff Liridona Gashi ("Plaintiff" or "Ms. Gashi") and brings this action for defamation and tortious interference with contract and economic opportunity against Defendant William Palmer, and in support thereof, states as follows:

**INTRODUCTION**

In 2024 and 2025, Plaintiff Liridona Gashi worked as an armed civilian armed security at Camp Bondsteel, a permanent United States Army installation in Kosovo, pursuant to her employment with Continuity Global Solutions Kosovo LLC and Continuity Global Solutions, LLC (collectively "CGS").

Defendant William Palmer ("Palmer") also worked at Camp Bondsteel for KBR, a defense contractor with offices in Virginia. Palmer worked as an Equipment Maintenance Supervisor for KBR, under the purview of the Logistics Civil Augmentation Program

(LOGCAP) V contract, which upon information and belief, in part is administered by Army personnel in Virginia.

As explained herein, while Ms. Gashi worked at Camp Bondsteel, she befriended Palmer. Their friendship was, at all times, platonic and was not sexual or otherwise romantic in nature. Despite this, Palmer made clear to Ms. Gashi that he wanted more, and he made sexual and/or romantic overtures towards her.  Ms. Gashi rejected Palmer's advances.

In response to this – with actual malice – Palmer falsely stated that Ms. Gashi had engaged in prostitution.  This allegation by Palmer was false and defamatory, and he knew it to be false at the time he made it, as Ms. Gashi was not a prostitute and had not engaged in prostitution.

Palmer's false allegation against Ms. Gashi had devastating consequences for her.  It resulted in the loss of her job from CGS and also resulted in her being barred from Camp Bondsteel by Army personnel, even though she explained to CGS that Palmer had been stalking and harassing her and further, that his allegation that she had engaged in prostitution was false.

It is against this backdrop that Ms. Gashi brings this lawsuit against Palmer, in order to obtain a measure of justice against him for his wrongful and malicious conduct towards her.

### JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a). The parties are citizens of different states and/or foreign states within the meaning of 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    This Court also has personal jurisdiction over the parties.  During the operative time frame, Ms. Gashi worked at Camp Bondsteel for CGS, which has an office in Northern Virginia.

3. Further, during the operative time, Palmer worked for KBR under the Army's Logistics Civil Augmentation Program (LOGCAP) V, through which it provided logistical support to U.S. Army personnel in Europe, to include at Camp Bondsteel. KBR has one or more offices in Northern Virginia and upon information and belief, the Army's LOGCAP contract of which KBR is a contractor was administered in part by Army personnel in Virginia, as well as by KBR personnel located in Virginia. Moreover, Defendant Palmer is a veteran of the U.S. Army and as such, ultimately served in the Army under the purview of the Pentagon, which is located in Northern Virginia.

4. As a result, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(3).

## **PARTIES**

5. Plaintiff Liridona Gashi is a United States citizen who currently lives and works in Kosovo. At all times relevant to this action, Ms. Gashi was employed by the CGS as a civilian, armed security guard assigned to Camp Bondsteel, Kosovo. She performed her duties competently and professionally throughout her tenure.

6. Ms. Gashi's employment as a civilian armed security guard at Camp Bondsteel was performed pursuant to a contract between the CGS Defendants and the United States Army and/or the Department of Defense.

7. Defendant William Palmer (a/k/a "Willie" Palmer) is a United States citizen who upon information and belief, resides at 22288 Highway 17, Lexington, MS 39095. At all relevant times to this action, Palmer served as Equipment Maintenance Supervisor for Defense-contactor KBR at Camp Bondsteel.

**FACTUAL ALLEGATIONS**

8.    Ms. Gashi was hired by the CGS in 2024 to serve as a civilian, security guard at Camp Bondsteel.

9.    Camp Bondsteel is the principal United States military installation in Kosovo and serves as headquarters for U.S. military operations in the region. Civilian contractor personnel, including security guards provided by CGS under its government contract, are integral to the installation's security operations and daily functioning.

10.    In her role, Ms. Gashi performed duties that included access control, perimeter security, personnel escort, and protection of personnel and assets at Camp Bondsteel. Ms. Gashi held all required certifications and was fully qualified for her position. At all times, she performed her duties professionally and competently throughout her employment.

11.    Between on or about July 3, 2025, and July 9, 2025, Defendant Palmer falsely stated to one or more third parties at Camp Bondsteel that Ms. Gashi had "engaged in prostitution." Upon information and belief, Defendant Palmer made this false statement about Ms. Gashi to CGS' management personnel.

12.    Prior to that time, Ms. Gashi had befriended Palmer and on occasion, had spent time in social settings with him. At all times, their friendship was platonic in nature, and not sexual.

13.    Palmer wanted more from his friendship with Ms. Gashi, as he made sexual overtures towards her. She rejected Palmer's advances and thereafter, he began stalking and threatening her, to include threatening in a phone call that he would go to her boss and ruin her.

14.    Because of this, Palmer lied about Plaintiff, and made the above-referenced false and defamatory statement against her to one or more third parties, including, upon information and belief, CGS' management personnel.

15.    On July 9, 2025, around 1400 hours (2 p.m.), Ms. Gashi reported to CGS' Program Manager – Gordon Pullen – that Palmer had been stalking and harassing her and that she had rejected his sexual advances.

16.    Ms. Gashi made this complaint to Mr. Pullen, and Florent Leka, CGS' Human Resources representative, and Keven Besselmann, who also worked in management for CGS, were also present at the time.

17.    Ms. Gashi also told Mr. Pullen (and the other CGS' management representatives) that Palmer had falsely accused her of having engaged in prostitution, and that she had text messages that would support her explanation.  Ms. Gashi also said that she would fully cooperate in relation to Palmer's false accusation and provide any other evidence that she had and could provide.

18.    Around 1900 hours (7 p.m.) the same day, Ms. Gashi sent an email complaint to Mr. Pullen, which was consistent with her verbal complaint.

19.    About two hours later, Mr. Pullen told Ms. Gashi that her employment was terminated that the military personnel (i.e., United States Army personnel) had revoked her post access.

20.    Palmer's false and defamatory statement against Ms. Gashi  was a direct and proximate cause in her being terminated from CGS and losing the income that she would have continued to earn from it, and she experienced an extended period of unemployment during which she was unable to work (despite her best efforts to find another job).

21.    Plaintiff's false and defamatory statement against Ms. Gashi was also a direct and proximate cause of her suffering severe damage to her good reputation among other personnel who worked at Camp Bondsteel and also in the community.

22.    Such wrongful conduct by Palmer was also a direct and proximate cause in her suffering severe emotional distress, to include anxiety, depression, loss of sleep, and worry, which

never should have occurred, and which she is continuing to address through mental health counseling.

## COUNT I
## Defamation *Per Se*

23. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

24. As alleged above, between about July 3, 2025, and July 9, 2025, Defendant Palmer falsely stated to one or more third parties that Plaintiff "had engaged in prostitution."

25. This statement by Defendant Palmer was false, as Plaintiff had not engaged in prostitution.

26. This false statement by Defendant Palmer accused Plaintiff of having committed the crime of prostitution, a crime of moral turpitude for which under U.S. law, she could be indicted and imprisoned, if convicted of such.

27. This false statement by Defendant Palmer caused significant harm to Plaintiff's reputation for good character and morals, and caused others to not wish to associate with her.

28. Defendant Palmer made this false statement about Plaintiff to one or more third parties, including, upon information and belief, to CGS' management personnel.  It was not privileged.

29. Defendant Palmer acted with malice against Plaintiff when he made this statement, as he knew it was false when he made it and/or he acted with reckless disregard for the truth in making it.

30. This false statement by Defendant Palmer was defamatory *per se* and as a result, damages are presumed.

31. Additionally, Defendant Palmer's false and defamatory statement against Ms. Gashi was a direct and proximate cause of her losing her job with CGS and the income that she would

have continued to earn from it, and she experienced an extended period of unemployment during which she was unable to work (despite her best efforts to find another job). Plaintiff also suffered severe damage to her good reputation among other personnel who worked at Camp Bondsteel and also in the community. Plaintiff also suffered severe emotional distress, to include anxiety, depression, loss of sleep, and worry, which never should have occurred, and which she is continuing to address through mental health counseling.

32. As a result, Plaintiff seeks an award of compensatory damages against Defendant Palmer, in an amount to be established at trial, of no less than $1,000,000. This includes compensatory damages for presumed damage to Plaintiff's reputation, as well as compensatory damages for specific and demonstrable harm to such, which include but are not limited to her being barred from Camp Bondsteel by Army personnel; the loss of her employment with CGS; her extended period of unemployment thereafter, despite her best efforts to find another job; and damages for the severe emotional distress and mental anguish that she suffered.

34. Because Defendant Palmer acted in a willful and malicious manner towards Plaintiff when he made this false and defamatory statement about her, Plaintiff also seeks an award of punitive damages, in an amount to be determined at trial, of no less than $1,000,000.

### COUNT II
**Tortious Interference with Contractual Relationship and/or Business Expectancy**

35. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

36. As explained above, in 2025, Ms. Gashi worked for CGS at Camp Bondsteel. Ms. Gashi's employment with CGS was at-will in nature, pursuant to a written employment agreement.

37. In 2025, Palmer knew that Ms. Gashi worked for CGS.

38. Between July 3, 2025, and July 9, 2025, Palmer made a false and deceitful statement about Plaintiff to one or more third parties, which upon information and belief, included CGS' management personnel.

39. As explained above, Palmer falsely stated that Ms. Gashi had engaged in prostitution.

40. This allegation was false, as Ms. Gashi had not engaged in prostitution.

41. Palmer knew that this statement was false at the time that he made it, however, he made it in order to cause Ms. Gashi to be terminated by CGS, and to also interfere with her ability to gain other employment in the future, particularly with DoD contractors. In so doing, Palmer used wrongful and unfair means to interfere with Ms. Gashi's employment with CGS and with her ability to gain other employment in the future.

42 Palmer engaged in this wrongful conduct willfully and with actual malice towards Ms. Gashi, because he was angry because she had rebuffed his sexual and/or romantic overtures towards her.

43. Palmer's false statement about Ms. Gashi was a direct and proximate caused her suffering severe economic and other harm.

44. Such damage includes the loss of her job with CGS and further, as well as her being barred by Army personnel from entering Camp Bondsteel.

45. Moreover, Palmer's false statement against Ms. Gashi was a direct and proximate cause of her experiencing a significant period of unemployment, despite her best efforts to find other employment.

46. Additionally, Palmer's false statement was a direct and proximate cause for Ms. Gashi experiencing severe emotional distress and mental anguish, as well as significant damage to her reputation.

47. As a result, Ms. Gashi seeks an award of compensatory damages against Defendant Palmer, in an amount to be established at trial, of no less than $1,000,000. This includes compensatory damages for presumed damage to her reputation, as well as compensatory damages for specific and demonstrable harm to such, which include but are not limited to her being barred from Camp Bondsteel by Army personnel; the loss of her employment with CGS; her extended period of unemployment thereafter, despite her best efforts to find another job; and damages for the severe emotional distress and mental anguish that she suffered.

48. Because Defendant Palmer acted in a willful and malicious manner towards Plaintiff when he made this false and defamatory statement about her, Plaintiff also seeks an award of punitive damages, in an amount to be determined at trial, of no less than $1,000,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Liridona Gashi respectfully prays that this Court enter judgment in her favor and against Defendant William Palmer s as follows:

(a) an award of compensatory damages in an amount to be proven at trial, not less than $1,000,000, including general presumed damages, special damages for lost income and employment opportunities, and damages for emotional distress and reputational harm arising from defamation *per se*; ;

(b) an award of punitive damages against Defendant Palmer, in an amount to be determined at trial, not less than $1,000,000;

(c) an award of pre-judgment and post-judgment interest on all monetary awards at the maximum rate permitted by law;

(d) an award of costs for bringing this lawsuit and as otherwise permitted by applicable law; and

(e)    an award of such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiff Liridona Gashi demands a trial by jury on all issues so triable.

Dated: July 3, 2026

Respectfully Submitted,

/s/ *John B. Flood*

_____

John B. Flood (VSB No. 79813)
Stephen M. Godek (*pro hac vice* motion forthcoming)
Flood Law LLC
2600 Tower Oaks Blvd, Suite 290
Rockville, MD 20852
Tel.: (240) 403-2619
john@fmlaw.org
stephen@fmlaw.org

*Counsel for Plaintiff Liridona Gashi*

10